KRUEGER *v.* KRUEGER.

1. ESTATES OF DECEDENTS—VALUATION—FRAUD—EVIDENCE—DISTRI-
BUTION.

   In suit by deceased's brother, an alien, against illiterate widow
   for an accounting based upon alleged fraudulent undervalua-
   tion of assets so as to have net assets less than $3,000 in order
   to have them pass entirely to widow, evidence *held*, insufficient
   to sustain claim of fraudulent undervaluation where valuation
   was made during extreme depression, mortgaged property was
   in bad state of repair, taxes in arrears and payments of inter-
   est in default and no interest had been paid on bonds for five
   years, although subsequently the assets increased in value
   (3 Comp. Laws 1929, § 15726).

2. ACCOUNTING—EQUITY—ESTATES OF DECEDENTS.

   Alien brother of deceased *held*, to present no equity in estate of
   deceased requiring accounting by illiterate widow where
   brother's counsel, secured through consulate, failed to have
   an appearance entered in probate proceedings although they
   knew of pendency of same, probate proceedings were con-
   ducted in an orderly way and not surreptitiously and counsel
   were aware of subsequent increase of value of assets, upon
   which any claim in accounting suit could be based, months
   before final account was filed and petition to reopen estate has
   been denied (3 Comp. Laws 1929, § 15726).

3. ESTATES OF DECEDENTS—ACCOUNTING—EQUITY.

   Widow of deceased *held*, not required to account to deceased's
   brother for value of small amount of personal property sold
   and not included in inventory of estate where she disposed of
   it in good faith and in paying for last sickness and burial
   expended more than amount of such personalty as to which
   complaint is made.

4. Same—Accounting—Notice of Hearing on Final Account.

 In suit for accounting by deceased's brother, an alien, against widow based on alleged fraudulent undervaluation of estate, plaintiff's claim that proper and legal notice was not given of hearing of the final account in the estate *held*, without merit.

Appeal from Allegan; Miles (Fred T.), J. Submitted April 28, 1937. (Docket No. 101, Calendar No. 39,446.) Decided June 29, 1937.

Bill by Henry Krueger, also known as Henry Kroeger, against Etta Krueger for an accounting of the assets of an estate and other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Harry Pell* and *Louis James Rosenberg* (*Mannhardt & von Helmolt*, of counsel), for plaintiff.

*I. C. Montague*, for defendant.

North, J. Plaintiff filed this bill of complaint seeking an accounting of the assets of the estate of his deceased brother of whom defendant is the widow and only other heir at law. It is plaintiff's claim that some of the assets of his brother's estate by conspiracy between the widow and the administrator were fraudulently omitted from the inventory and other assets were fraudulently undervalued, that in consequence thereof the total value of the estate was less than $3,000, and under the statute hereinafter cited the whole of the estate was assigned to the widow, to the exclusion of plaintiff. The relief sought was denied and plaintiff has appealed.

Plaintiff's brother, Mr. Fred Krueger, and his wife, the defendant, resided in the township of Lee, Allegan county, Michigan. Mr. Krueger died in

August, 1931. The petition for probating the estate was not filed until April 24, 1933. In the meantime and on December 20, 1932, plaintiff, who resides in Germany, had given a power of attorney to the attorneys for the German consulate general, located in Chicago. This power of attorney was filed in the probate court in the Krueger estate on August 9, 1934. Prior to this time the attorneys connected with the German consulate in Chicago had sought information through local counsel at Allegan, Michigan, concerning this estate; but evidently no arrangement was ever made to have such local counsel actively appear in the probate proceedings and formal appearance never was entered therein in behalf of plaintiff. The Chicago attorneys repeatedly refer to their local counsel as their "correspondent." Such local counsel from time to time, by reason of interviews with the administrator of this estate, had information concerning the same and particularly concerning the steps finally taken in closing the estate.

In July, 1933, the assets of the estate consisting of three items, were appraised in the total amount of $1,500. The first of these assets was a small farm in Oceana county, Michigan, appraised at $500. Later this farm was sold for $675 under order of the probate court to pay expenses of administration. The second item in the inventory was a $4,000 mortgage on real estate in Cook county, Illinois, appraised at $1,000. The third item was bonds of the face value of $7,000 in the Louisville Provision Company which were appraised as worthless. The controversy mainly centers around plaintiff's claim that the Cook county mortgage and the bonds of the Louisville Provision Company were fraudulently undervalued; and that if their true value had been given, the net assets of the estate would have exceeded

$3,000 and plaintiff, under the statute (3 Comp. Laws 1929, § 15726), as an heir at law of deceased, would have taken one-half of such excess.

A careful review of this record fails to disclose testimony which will sustain plaintiff's contention as to the fraudulent undervaluation of these items. Instead it clearly appears that at the time the inventory was made and during subsequent months, at which time extreme depression was prevalent, the actual worth of each of these items of property was decidedly uncertain. The mortgaged Cook county real property was in a bad state of repair, taxes were in arrears, and payments of interest in default. The administrator was not able to dispose of the mortgage. An attempt to secure a Federal home owners' loan was unsuccessful when first made. Later such a loan was consummated; and finally (after the estate was closed) defendant herein received for her interest in this mortgage, home owners' loan bonds in the amount of $2,826. At the time the inventory was made the Louisville Provision Company was in receivership and there is testimony that no interest had been paid on its bonds for a period of five years. The bonds of decedent had been placed with a bondholders' committee. All parties connected with the estate in good faith and for obvious reasons considered this asset worthless. The unexpected happened. The Louisville company was reorganized and a few weeks before the administrator filed his final account a remittance of $312.50 was received. It is uncertain from the record whether this amount was in part payment of accrued interest on the bonds or whether it was a dividend on partial distribution of assets incident to reorganization. The amount is itemized in the administrator's final account, "By interest on Louis-

ville Provision Co. investment." All of the residue of the estate was assigned to defendant herein. This residue included the interest in the Louisville company, then reorganized and known as the Louproco Realties. Months after the estate was closed it developed that defendant's bonds and stock in the Louproco Realties were of substantial value. On July 5, 1935, the Chicago attorneys advised the probate judge by letter as follows:

"We wish to bring to your attention that we have a *bona fide* offer of 25 plus accrued interest for the $7,000 Louproco bonds and the 70 shares of stock which the administrator represented to your honor in his final account of no value."

But this was more than seven months after the estate was closed. The record shows that the local counsel for plaintiff had full knowledge of the reorganization of the Louisville Provision Company as early as August 10, 1934, and wrote the administrator of the Krueger estate concerning securing the new bonds. In this letter to the administrator, counsel stated:

"Apparently there can something be realized from these bonds."

This was about three months before the estate was closed.

The final accounting which is not questioned, except as herein indicated, resulted in the widow receiving from the estate $1,270.65. The Cook county real estate mortgage was carried into the final account at $1,000. If defendant were to be charged with the amount she finally received on this mortgage in excess of $1,000, her inheritance would be very little, if any, in excess of the $3,000 which she

was entitled to receive under the statute hereinbefore cited. As to the Louisville investment, we fail to find that there was fraud or conspiracy on the part of this aged, illiterate widow, or the administrator of the estate, in carrying it into the final account as an item of no value.

After proceedings had been pending in the probate court for more than a year and a half the estate was closed, November 26, 1934. As just above indicated, we think this record shows that neither defendant nor the administrator acted in bad faith in closing the estate, with an assignment of the residue to defendant. In October, 1935, plaintiff herein petitioned to have the estate reopened; but this was denied. The bill of complaint herein was not filed until February 21, 1936. There is no equity in plaintiff's contention. The German consulate in Chicago and the attorneys through whom it acted, knew of the pendency of the probate proceedings in the Krueger estate from the beginning. There is no reason why either they or local counsel employed by them should not have cared for the interests of plaintiff as the probate proceedings progressed. It is not claimed that the German consulate or its attorneys relied upon local counsel to enter an appearance in the probate court and protect plaintiff's interest; but instead the matter was allowed to go unattended. Defendant's petition for probating her husband's estate gave plaintiff's name and residence as one of the heirs at law. There is no claim that there was anything surreptitious about the probate proceedings. They were conducted in an orderly way under the supervision of the probate judge. We are in accord with the conclusion of the circuit judge who found in effect that it was the

subsequent increase in the property values which furnishes whatever apparent foundation there is for plaintiff's claim rather than proof of fraud such as would entitle plaintiff to an accounting for assets received by the defendant from the estate of her deceased husband.

A comparatively small amount of other personal property was left by deceased.. Plaintiff complains that this other or additional personal property was not included in the inventory of the estate. Before probate proceedings were instituted the widow of deceased had disposed of this personal property, evidently believing she had a right to do so. But the value of such property is more than offset by property rights of the widow which she did not assert in the probate proceedings and by the expenses of Mr. Krueger's last sickness and burial paid by the widow in the amount of $993, for which she was reimbursed only to the extent of $321.10.

There is no merit to appellant's contention that proper and legal notice was not given of the hearing of the final account in this estate. We are in accord with the result reached in the circuit court, and the decree dismissing plaintiff's bill of complaint is affirmed. Costs to appellee.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.